UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY ST. CIN,

      Plaintiff,                                Hon. Ellen S. Carmody

v.

                                                 Case No. 1:14-cv-671

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On September 8, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #13).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 41 years of age on his alleged disability onset date.  (Tr. 145).  He successfully completed high school and worked previously as a construction worker and supervisor.  (Tr. 25-26).  Plaintiff applied for benefits on September 23, 2011, alleging that he had been disabled since September 14, 2011, due to degenerative disc disease, sciatica, spinal stenosis, spine and back arthritis, herniated disc, and chronic pain.  (Tr. 145-55, 175).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 81-142).  On January 30, 2013, Plaintiff appeared before ALJ William Sampson with testimony being presented by Plaintiff, Plaintiff's wife, and a vocational expert.  (Tr. 32-72).  In a written decision dated March 15, 2013, the ALJ determined that Plaintiff was not disabled.  (Tr. 19-27).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On February 11, 2004, Plaintiff underwent surgery to repair "chronic impingement syndrome of the right [dominant] shoulder." (Tr. 251-52, 348). On February 2, 2010, Plaintiff underwent decompression surgery to treat "spinal stenosis [at] L3-5 with degenerative disk disease." (Tr. 260-61). Following surgery, Plaintiff participated in physical therapy and was eventually able to return to work without restriction. (Tr. 274-307).

On August 15, 2011, Plaintiff suffered an on-the-job injury after which he began experiencing "aching" and "stabbing" back pain which radiated into his lower extremities. (Tr. 348). Plaintiff rated his pain as 7/10. (Tr. 348). On September 16, 2011, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed: (1) "grade I retrolisthesis of L2 on L3 and grade I anterolisthesis of L4 on L5"; (2) disc herniation, "moderate" foraminal stenosis, and "mild" central canal stenosis at L1-L2; and (3) disc bulge and "moderate" to "advanced" foraminal stenosis at L2-L3. (Tr. 335-36). Plaintiff was prescribed Norco to treat his pain. (Tr. 345-46).

On January 2, 2012, Plaintiff was examined by Dr. Christina Paregis. (Tr. 424-27). Plaintiff reported that his back pain ranged from 4/10 to 7/10. (Tr. 424). Plaintiff also reported experiencing "a burning sensation in his lower extremities especially with walking" which the doctor characterized as "neurogenic claudication." (Tr. 425). Dr. Paregis reviewed Plaintiff's previous MRIs and concluded that Plaintiff was experiencing a "significant degree of nerve root impingement and central canal compromise." (Tr. 425). The doctor reported that these results were "consistent with [Plaintiff's] complaints of pain and numbness into the left groin." (Tr. 425). Straight leg raising was positive and Plaintiff "require[d] frequent position change for comfort." (Tr. 426). Dr. Paregis concluded that Plaintiff was "at high risk for further disc herniation and neurologic

4

compromise." (Tr. 426). The doctor imposed the following limitations on Plaintiff: (1) no lifting more than 10 pounds; (2) sit/stand as needed; and (3) "limited" bending and twisting. (Tr. 426). Dr. Paregis subsequently prescribed Methadone and Neurontin for Plaintiff. (Tr. 429-30).

On April 10, 2012, Plaintiff reported that his back pain ranged from 4/10 to 8/10. (Tr. 431). Plaintiff also reported that he was experiencing side effects, specifically lethargy, from his pain medications. (Tr. 431). On July 24, 2012, Plaintiff reported that "he has learned to limit himself by decreasing his activity or by changing positions to control his pain symptoms." (Tr. 434). Treatment notes dated November 13, 2012, indicate that Plaintiff was continuing to experience back pain which radiated into his lower extremities. (Tr. 435). Straight leg raising was also positive. (Tr. 435). Dr. Paregis continued the aforementioned functional limitations. (Tr. 435). Treatment notes dated January 4, 2013, indicate that Plaintiff's "pain continues to be increased with any prolonged positioning including standing and sitting." (Tr. 436). Straight leg raising was again positive. (Tr. 436).

At the administrative hearing, Plaintiff testified that he experiences "constant" back pain which radiates into his lower extremities. (Tr. 40). Plaintiff also reported experiencing headaches "just about every day." (Tr. 40). Plaintiff reported that on average his back pain rates as "three to four" out of ten. (Tr. 41-42). Plaintiff testified that his medication makes him "occasionally tired," but that he otherwise does not experience side effects therefrom. (Tr. 42). Plaintiff reported that he cannot lift more than 10 pounds and cannot sit or be on his feet for any appreciable length of time. (Tr. 42-43). Plaintiff reported that he was presently taking college classes to obtain a degree in accounting. (Tr. 44-45). Plaintiff reported that because of his back pain he was "allowed to get up and move around or do whatever I need to." (Tr. 45). Plaintiff reported

that because of his headaches and back pain he was experiencing difficulty with school and occasionally was forced to leave class early. (Tr. 46-47).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from degenerative disc disease and herniated disc of the lumbar spine, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) he can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds; (2) he can occasionally balance, stoop, kneel, crouch, or crawl; and (3) he requires a sit/stand option that permits him to alternate between sitting and standing every 30 minutes without being off task. (Tr. 22).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y*

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

*of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

The vocational expert testified that there existed approximately 10,250 jobs in the state of Michigan, and approximately 344,000 throughout the country, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 64-67). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **Dr. Paregis' Opinion**

On January 3, 2012, Dr. Christina completed a from regarding Plaintiff's ability to perform work-related physical activities. (Tr. 412-23). The doctor concluded that Plaintiff's functional abilities were somewhat more limited than the ALJ determined. The ALJ discounted Dr. Paregis' opinion on the ground that the doctor's opinion is inconsistent with the medical evidence, including her own treatment notes. Plaintiff asserts that he is entitled to relief because the ALJ failed to afford controlling weight to the doctor's opinion in violation of the Treating Physician Rule.

The treating physician doctrine recognizes that medical professionals who have a long

history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the

physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The treating physician doctrine "is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing

10

>relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

Dr. Paregis first examined Plaintiff on January 2, 2012, and completed the report in question the following day. (Tr. 421-27). Thus, when the doctor offered her opinions she could not have been considered a treating physician. The fact that she continued to treat Plaintiff is, as noted above, not relevant to whether the opinion in question is entitled to deference as an opinion from a treating physician. Accordingly, the Court rejects Plaintiff's argument that the ALJ failed to properly assess Dr. Paregis' opinion under the Treating Physician Rule.

**II.       Plaintiff's Credibility**

At the administrative hearing, Plaintiff testified that he is limited to a greater degree than the ALJ recognized. (Tr. 38-55). Plaintiff also completed a function report indicating that he experiences greater limitations than the ALJ recognized. (Tr. 199-206). Specifically, Plaintiff reported that he is unable to sit or be on his feet for more than a few minutes before he must switch positions. (Tr. 42-43, 204). Plaintiff reported that he often has to lay down throughout the day to alleviate his back pain. (Tr. 42-48, 199-200). Plaintiff reported that he cannot lift more than 10 pounds without experiencing "a lot of pressure in the center of [his] back" and, moreover that he

11

experiences difficulty twisting or bending to the point where he often requires assistance even putting on his pants and socks. (Tr. 43, 50, 200). Plaintiff also reported that his pain often interferes with his ability to sleep. (Tr. 200). The ALJ discounted Plaintiff's allegations on the ground that Plaintiff was able to "perform significant activities of daily living, including getting his daughter ready for school, picking her up from school, picking up his wife from work, and attending college for an accounting degree." (Tr. 23). Plaintiff argues that he is entitled to relief because the ALJ's rationale for discrediting his credibility is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

The ALJ discredited Plaintiff's allegations because he allegedly performs "significant activities of daily living including getting his daughter ready for school, picking her up from school, picking up his wife from work, and attending college for an accounting degree." A review of

13

Plaintiff's activities, however, reveals that such are not inconsistent with his allegations regarding his ability to function. With respect to getting his daughter ready for school, Plaintiff testified that he merely "tell[s] her to get up and get ready to go to school." (Tr. 50). Plaintiff indicated that he did not have to do anything further in this regard because his daughter is "self-sufficient." (Tr. 50). As for driving to pick up his wife and daughter, Plaintiff testified that neither trip is farther than 3-4 miles round trip. (Tr. 51).

While Plaintiff attends college his activity level in so doing is not inconsistent with his testimony and other reports on the matter. (Tr. 42-55, 199-206). If anything, Plaintiff's efforts to obtain a college degree so that he can return to the work force and support his family, like his positive work history, bolsters, rather than detracts from, his credibility. *See*, *e.g.*, *White v. Commissioner of Social Security*, 312 Fed. Appx. 779, 798 (6th Cir., Feb. 24, 2009) (claimant's "extensive work history and attempts to continue working despite his disability support his credibility"); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (the ALJ must consider a claimant's work history when assessing his credibility and a good work history strengthens the claimant's credibility); *Miller v. Barnhart*, 2002 WL 31243422 at *5 (D. Kansas, Sept. 17, 2002) (claimant's work history is relevant in assessing his credibility); *Warren v. Barnhart*, 190 F.Supp.2d 1173, 1178 (E.D. Ark. 2002) (*citing Nunn v. Heckler*, 732 F.2d 645 (8th Cir. 1984)) ("a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"); *Tyson v. Apfel*, 107 F.Supp.2d 1267, 1270-71 (D. Colo. 2000) ("[w]here a claimant has a good work history, she is entitled to substantial credibility when she then asserts that she is unable to work").

Furthermore, Plaintiff's testimony regarding the extent to which he performs various

household and related tasks is likewise not inconsistent with his subjective allegations. (Tr. 42-55, 199-206). The fact that Plaintiff is able to perform a limited range of activity for short periods of time is not inconsistent with a claim of disability. *See, e.g., Leos v. Comm'r of Soc. Sec.*, 1996 WL 659463 at *2 (6th Cir. 1996) (the fact that a claimant performed limited nonstrenuous activities does not preclude a finding that she experiences pain to a disabling degree); *Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability"); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a "total basket case"). In sum, the Court finds that the ALJ's decision to discredit Plaintiff's credibility is not supported by substantial evidence.

### III. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also, Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

The record fails to establish that Plaintiff is entitled, at this juncture, to an award of benefits. There does not exist overwhelming evidence that Plaintiff is disabled. Moreover, while there exists evidence that Plaintiff is more limited than recognized by the ALJ, the record contains

15

evidence supporting the contrary conclusion. Simply put, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date:  June 12, 2015                                         /s/ Ellen S. Carmody
                                                             ELLEN S. CARMODY
                                                             United States Magistrate Judge